UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOWLER PACKING COMPANY, INC. and GERAWAN FARMING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID M. LANIER, CHRISTINE BAKER, and JULIE A. SU, <br><br> Defendants. | No. 1:16-cv-00106-DAD-SAB <br><br> ORDER GRANTING MOTION TO DISMISS <br><br> (Doc. No. 10) |

This matter is before the court on defendants' motion to dismiss the complaint for failure to state a claim. A hearing on the motion was held on June 7, 2016. Deputy Attorney General Thomas Patton and Deputy Attorney General Enrique Monagas appeared on behalf of defendants. Attorneys David Schwarz and Michael Harbour appeared on behalf of plaintiffs. Attorney Wencong Fa appeared on behalf of amici curiae. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant defendants' motion to dismiss.

## BACKGROUND

**A.    Piece-Rate Compensation and AB 1513**

This case concerns legislation addressing the compensation of employees on a piece-rate basis. Piece-rate compensation involves a method of calculating compensation based on the type and number of tasks completed, rather than by the number of hours worked. Under the California

Industrial Welfare Commission's Wage Order No. 4, promulgated in 2002, "[e]very employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." Cal. Code Regs. tit. 8, § 11040(4)(B).[1] In the piece-rate compensation context, it is not immediately apparent that an employee, who is paid on a per-task basis, is being compensated in accordance with minimum wage laws, which requires payment on a per-hour basis. Accordingly, to ensure piece-rate employees are paid "not less than the applicable minimum wage," some employers calculated a "minimum wage floor" by multiplying the number of hours worked by the applicable minimum wage. If an employee's compensation under a piece-rate system did not exceed the minimum wage floor over a particular period of time, her compensation would be supplemented up to the minimum wage floor. *See Gonzalez v. Downtown LA Motors*, 215 Cal. App. 4th 36, 41–42 (2013).

      1.     <u>*Gonzalez* and *Bluford*</u>

In 2013, California appellate courts issued two decisions concerning the application of California's minimum wage laws to piece-rate compensation.

In *Gonzalez v. Downtown LA Motors*, the California Court of Appeal for the Second Appellate District held that Wage Order No. 4 applies to piece-rate compensation in the same manner it does for hourly compensation. 215 Cal. App. 4th 36, 49 (2013). With regard to the requirement that employees be paid the minimum wage "for all hours worked," the court concluded that piece-rate employees are entitled to "be compensated at the minimum wage for *each* hour worked," rather than by averaging compensation over a period of time. *Id.* at 45 (emphasis in original) (quoting *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005)). Thus, the court held that under California law, piece-rate employees are entitled to separate hourly compensation for non-productive time, including time spent waiting for tasks, attending

---

[1] As explained below, plaintiffs in this case are named defendants in two related cases concerning piece-rate compensation. Those cases involve alleged violations of the California Industrial Welfare Commission's Wage Order No. 14, which pertains to agricultural employees and contains substantially identical language regarding the minimum wage. *See* Cal. Code Regs. tit. 8, § 11140(4)(B).

2

meetings and trainings, or performing other work for an employer. *Gonzalez*, 215 Cal. App. 4th at 40–41.

Months later, in *Bluford v. Safeway Stores, Inc.*, the California Court of Appeal for the Third Appellate District further held that for piece-rate compensation, rest and meal periods are considered "hours worked" and must be compensated separately. 216 Cal. App. 4th 864, 872 (2013) (citing *Armenta*, 135 Cal. App. 4th at 323).

### 2. AB 1513 and California Labor Code § 226.2

Following the *Gonzalez* and *Bluford* decisions, many employers expressed concern about liability given that their existing wage calculation methods were inconsistent with the courts' holdings in those cases. This potential liability, employers believed, would likely lead to increased litigation.[2] Recognizing these concerns, in 2015, California enacted Assembly Bill 1513 ("AB 1513") to address claims for recovery of wages, damages, and penalties with respect to piece-rate employees.

AB 1513 added § 226.2 to the Labor Code. Section 226.2 includes two primary provisions. First, subdivision (a) provides that employees compensated on a piece-rate basis must be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation. In addition, it establishes certain wage statement requirements as well as a methodology for calculating wages for these employees. Second, subdivision (b) creates a safe harbor by which employers may assert an affirmative defense to any claim for recovery of wages, damages, and penalties "based solely on the employer's failure to timely pay the employee the compensation due for rest and recovery periods and other nonproductive time," so long as the employer complies with certain requirements by December 15, 2016. Notably, an employer electing to assert this affirmative defense must pay its employees for previously uncompensated or undercompensated rest and recovery periods and other nonproductive time

---

[2] *See* Assemb. Comm. on Labor & Emp't, Floor Analysis – AB 1513 (Sept. 11, 2015) ("*Assembly Floor Report*"), *available at* http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB1513; S. Labor & Indus. Relations Comm., Floor Analysis – AB 1513 (Sept. 11, 2015), *available at* http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB1513.

from July 1, 2012, to December 31, 2015, using one of two stated formulas. Cal. Lab. Code § 226.2(b)(1).

Employers, however, cannot access the safe harbor in a number of circumstances, enumerated in subdivision (g) of Labor Code § 226.2. Two exceptions are particularly relevant to the instant case:

> (2) Claims based on the failure to provide paid rest or recovery periods or pay for other nonproductive time for which all of the following are true:
>
>> (A) The claim was asserted in a court pleading filed prior to March 1, 2014, or was asserted in an amendment to a claim that relates back to a court pleading filed prior to March 1, 2014, and the amendment or permission for amendment was filed prior to July 1, 2015.
>>
>> (B) The claim was asserted against a defendant named with specificity and joined as a defendant, other than as an unnamed (DOE) defendant pursuant to Section 474 of the Code of Civil Procedure, in the pleading referred to in subparagraph (A), or another pleading or amendment filed in the same action prior to January 1, 2015.
>
> * * *
>
> (5) Claims for paid rest or recovery periods or pay for other nonproductive time that were made in any case filed prior to April 1, 2015, when the case contained by that date an allegation that the employer has intentionally stolen, diminished, or otherwise deprived employees of wages through the use of fictitious worker names or names of workers that were not actually working.

Cal. Lab. Code § 226.2(g). These safe harbor provisions take effect on January 1, 2016, and remain in effect until January 1, 2021. *See* Cal. Lab. Code § 226.2(k).

**B.     Related Wage Disputes Before This Court**

Plaintiffs Gerawan Farming, Inc. ("Gerawan") and Fowler Packing Company, Inc. ("Fowler") are named defendants in two related cases pending before this court concerning piece-rate compensation.

On February 3, 2014, agricultural piece-rate employees commenced a putative class action against Gerawan, claiming in part that Gerawan failed to pay wages due for rest periods and other nonproductive time. *Amaro v. Gerawan Farming, Inc.*, No. 1:14-cv-00147-DAD-SAB, Doc. No.

4

2. Because these claims were alleged prior to March 1, 2014, and because Gerawan was a named defendant in the complaint, the affirmative defense set forth in Labor Code § 226.2(b) is unavailable to Gerawan in the *Amaro* case, pursuant to § 226.2(g)(2). (*See also* Doc. No. 1 ¶ 26.)

Similarly, on March 17, 2015, agricultural piece-rate workers commenced a putative class action against Fowler, claiming in part that Fowler failed to pay wages due for rest periods and other nonproductive time. *Aldapa v. Fowler Packing Co., Inc.*, No. 1:15-cv-00420-DAD-SAB, Doc. No. 2. In addition, the plaintiffs in *Aldapa* alleged Fowler willfully used fictitious worker names (referred to as "ghost workers" or "muertitos") in order to undercompensate employees who were actually working. *Id.* ¶¶ 32–34. Because the case was filed prior to April 1, 2015, and because the complaint contained so-called "ghost worker claims" relating to the use of fictitious worker names, the affirmative defense set forth in § 226.2(b) is unavailable to Fowler in the *Aldapa* case, pursuant to § 226.2(g)(5). (*See also* Doc. No. 1, ¶ 27.)

C. **Procedural Background**

On January 22, 2016, plaintiffs Fowler and Gerawan commenced the instant action against defendants David M. Lanier, in his official capacity as Secretary of the California Labor and Workforce Development Agency; Christine Baker, in her official capacity as the Director of the California Department of Industrial Relations; and Julie A. Su, in her official capacity as California Labor Commissioner. (Doc. No. 1.) Specifically, plaintiffs through this action challenge subdivisions (g)(2) and (g)(5) of California Labor Code § 226.2 under the United States Constitution and the California Constitution. First, plaintiffs allege that subdivisions (g)(2) and (g)(5) violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 7 of the California Constitution. (*Id.* ¶ 52.) Second, plaintiffs allege these same subdivisions violate the prohibition against bills of attainder of Article I, Section 10 of the United States Constitution and Article I, Section 9 of the California Constitution. (*Id.* ¶ 59.) Finally, plaintiffs allege these subdivisions of California Labor Code § 226.2 violate Article IV, Section 16 of the California Constitution because they are impermissible laws of special applicability. (*Id.* ¶ 66.)

/////

5

According to the complaint, shortly prior to enactment, AB 1513 was amended as a result of private negotiations between representatives of the Labor and Workforce Development Agency, certain employer groups, and labor unions including the United Farmworkers ("UFW"). (*Id.* ¶ 36.) As a result of these negotiations, subdivisions (g)(2) and (g)(5) were included with the intent to exclude plaintiffs in the *Amaro* and *Aldapa* cases from taking advantage of the affirmative defense set forth in § 226.2(b). (*See id.* ¶¶ 36–37) Plaintiffs cite statements of state legislators questioning the propriety of these amendments, as well as statements of the bill's author purportedly admitting that the negotiated exclusions were necessary to the bill's passage. (*Id.* ¶¶ 38, 40–41, 43–45.)

On March 7, 2016, defendants filed the instant motion to dismiss. (Doc. No. 10.) On April 1, 2016, a group of organizations—the Western Growers, the California Fresh Fruit Association, the National Hmong-American Farmers, the African-American Farmers of California, California Farm Bureau Federation, the Fresno County Farm Bureau, and the Nisei Farmers League—filed an opposition brief as amici curiae, with respect to plaintiffs' bill of attainder claim only. (Doc. No. 15-2.) On April 4, 2016, plaintiffs filed their opposition. (Doc. No. 16.) On April 25, 2016, defendants filed their reply. (Doc. No. 23.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light

most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## DISCUSSION

### A.     Standing and Ripeness

As an initial matter, defendants seek dismissal of all claims on the grounds that plaintiffs lack Article III standing due to their failure to allege an injury-in-fact, or because the claims are not ripe. (Doc. No. 10 at 10–12.) The court is not persuaded by this argument. Whether the purported deficiency is characterized as a lack of injury-in-fact or ripeness, the court must "consider whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Here, the parties agree that plaintiffs are barred from asserting the affirmative defense under § 226.2(b) because claims currently being litigated against them fall within the exceptions listed in § 226.2(g). Thus, the operation of § 226.2 serves to create an actual and concrete controversy as to whether plaintiffs have the right to assert the statutory affirmative defense in plaintiffs' related cases. Plaintiffs have standing, and the court declines to dismiss the complaint on these grounds.

### B.     Eleventh Amendment Immunity

Defendants also seek to dismiss all state constitutional claims on Eleventh Amendment grounds. In general, the Eleventh Amendment bars suits against a state, absent the state's affirmative waiver of its immunity or congressional abrogation of that immunity. *Pennhurst v. Halderman*, 465 U.S. 89, 98–99 (1984); *Simmons v. Sacramento Cnty. Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999); *see also Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher*

*Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state."). "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121. Plaintiffs have conceded in their briefing and at hearing on the pending motion that this court lacks jurisdiction over their state law claims. (Doc. No. 16 at 12 n.6.) Accordingly, plaintiffs' state law claims are dismissed.

**C.     Equal Protection**

Plaintiffs' first federal constitutional claim alleges that subdivisions (g)(2) and (g)(5) of Labor Code § 226.2 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Doc. No. 1 ¶¶ 51–57.) Specifically, they allege that these exceptions create, without a rational basis, a distinction between employers who are barred from access to the statutory safe harbor and those who are not.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). *See also Lee*, 250 F.3d at 686. "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993*). See also United States v. Hancock,* 231 F.3d 557, 566 (9th Cir. 2000). Here, because the parties agree that § 226.2 implicates neither a suspect class nor a fundamental right (*see* Doc. No. 16 at 17), this highly deferential rational basis standard applies to plaintiffs' equal protection challenge.

Under rational basis scrutiny, a statutory classification must be upheld so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Thus, under this highly deferential standard,

> the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have

8

> been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (citations omitted). *See also Armour v. City of Indianapolis, Ind.*, 566 U.S. ___, ___, 132 S. Ct. 2073, 2080 (2012). The party challenging the rationality of a legislative classification bears the burden "to negative every conceivable basis which might support it." *Beach*, 508 U.S. at 315 (citing *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). *See also Heller*, 509 U.S. at 320; *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011).

    1.    <u>Subdivision (g)(2) survives rational basis scrutiny.</u>

In arguing that subdivision (g)(2) fails the rational basis test, plaintiffs advance three reasons for why that exception is illogical: (1) the expectations of class members in the *Amaro* litigation would be better served if Gerawan could assert the statutory affirmative defense; (2) the exception is unnecessary to protect employees' ability to recover substantial time and costs already invested in litigation, and in *Amaro*, fails to guarantee employees recover any wages at all; and (3) the exception is unnecessary to preserve the integrity of determinations already made on the merits. (Doc. No. 16 at 27–28.) While the reasons offered by plaintiffs here are certainly reasonable policy rationales against the inclusion of subdivision (g)(2), they fail to negate every plausible and reasonable basis for the legislative classification which was adopted.

Indeed, as defendants point out, the legislature had at least one reasonably conceivable basis for including the exception in subdivision (g)(2). In creating a statutory affirmative defense for employers under Labor Code § 226.2, the legislature sought to address an expected increase in litigation following the *Gonzalez* and *Bluford* decisions. The legislature could have believed that an increase in litigation would negatively impact both litigants and the court system.[3] At the

---

[3] Legislative analysts identified this concern when AB 1513 was being considered:

> [Employers] and others have expressed concerns that these decisions may generate significant litigation and administrative workload for employers, the courts, and the Labor Commissioner, in actions to recover back wages and penalties.

*Assembly Floor Report* at 5.

9

same time, however, the legislature could have balanced this concern against a desire not to disturb the expectations of parties in ongoing litigation. Thus, it is certainly conceivable the legislature sought to impose a reasonable limit by allowing employers to invoke the statutory affirmative defense only in cases that had not yet been filed, or that were in the very early stages of litigation. In contrast, in cases that had been pending for a substantial amount of time prior to the statute taking effect, the legislature could have concluded the parties and the courts were more likely to have invested substantial resources and to have developed significant expectations. This approach is consistent with the idea that "the legislature must be allowed leeway to approach a perceived problem incrementally." *Beach*, 508 U.S. at 316. *See also City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("Legislatures may implement their program step by step . . . in . . . economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations.").

In addition, the classification of claims under subdivision (g)(2) based on the date the claim is asserted—March 1, 2014—represents a reasonable passage of time, nearly twenty-two months prior to the effective date of the law. To the extent plaintiffs argue that the date was arbitrarily chosen or selected with the intent to target the *Amaro* litigation, this court is in no position to second-guess a provision that is otherwise rationally related to a legitimate state interest. *See Dukes*, 427 U.S. at 303 ("States are accorded wide latitude in the regulation of their local economies under their police powers, and *rational distinctions may be made with substantially less than mathematical exactitude*.") (emphasis added); *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1086 (9th Cir. 2015) (upholding the principle that "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.") (*quoting Beach*, 508 U.S. at 315); *American Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1059 (9th Cir. 2014). Accordingly, the legislature's classification of employers based on their involvement in pending and longstanding litigation is not so attenuated so as to render subdivision (g)(2) irrational.

/////

/////

### 2. Subdivision (g)(5) survives rational basis scrutiny.

With respect to subdivision (g)(5), plaintiffs principally argue that this exception is irrational because (1) it allows employers to assert the statutory affirmative defense as to applicable claims brought after April 1, 2015; and (2) it bars use of the affirmative defense based solely on allegations of wrongdoing. (Doc. No. 16 at 28–30.) As in the case of subdivision (g)(2), these arguments are similarly unavailing because they merely offer alternative policy choices rather than negate all conceivable rational bases for creating such a classification.

In considering the universe of potential cases involving claims for failure to pay wages due for rest and recovery periods and other nonproductive time, the legislature could have concluded that there existed a legitimate state interest in allowing a subset of those cases to proceed through litigation. Certainly, the legislature could have decided that employers facing both claims for failure to pay wages for nonproductive time and ghost worker claims should not be afforded the same affirmative defense as those defending claims for lost wages only. Such a distinction clearly finds a rational basis and would not have been so unrelated to the legislature's broader goal of addressing the potential increase in litigation so as to bar its adoption. As defendants point out, the legislature may have been particularly sensitive to allegations involving the improper use of fictitious worker names to diminish employee compensation.

Moreover, allegations that an employer intentionally stole, diminished, or otherwise deprived employees of wages through the use of fictitious worker names pose unique challenges related to the later calculation of lost wages. Because the safe harbor provision of Labor Code § 226.2 requires determination of either "actual sums due" or an "employee's gross earnings," any calculation of lost wages may be potentially inaccurate where an employer is also accused of intentionally altering pay records. *See* Cal. Lab. Code § 226.2(b)(1). Thus, it is entirely reasonable for the legislature to have elected to treat cases involving ghost worker allegations differently from other piece-rate compensation cases.

Finally, plaintiffs argue that the classification of claims under subdivision (g)(5) based on the date a claim is asserted—April 1, 2015—is arbitrary and intended solely to preclude use of the statutory affirmative defense in the *Aldapa* case. Plaintiffs suggest that the legislature should

11

have applied such an exception to *all* cases involving ghost worker claims. (Doc. No. 16 at 29–30.) But, despite plaintiffs' protestations, the April 1, 2014 deadline serves a rational purpose. First, it is clear that in light of the concerns described above, the legislature needed to set some limitation as to when ghost worker claims could be made. Without a limit, as defendants point out, employees seeking lost piece-rate compensation could have simply included these additional allegations for the sole purpose of denying an employer the ability to take advantage of the statutory affirmative defense. Furthermore, the decision to select April 1, 2015, as opposed to any other date, is reasonable, and the court finds it unnecessary to question the process that resulted in the legislature's adoption of this time limitation. The legislature is necessarily engaged in the business of line drawing, and any delineation would have led to a distinction between employers who would be allowed to assert an affirmative defense and those who would not. *See Beach*, 508 U.S. at 315 ("Defining the class of persons subject to a regulatory requirement—much like classifying governmental beneficiaries—'inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.'") (quoting *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)). The legislative classification of employers based on allegations of improper use of fictitious worker names under subdivision (g)(5) is rational and related to a legitimate state interest for purposes of equal protection. *See Nordlinger*, 505 U.S. at 10.

Because the court finds rational bases exist as to subdivisions (g)(2) and (g)(5), plaintiffs' equal protection claim must fail. Therefore, defendants' motion to dismiss as to that claim will be granted.

**D.     Bill of Attainder**

Plaintiffs' second claim alleges that subdivisions (g)(2) and (g)(5) of California Labor Code § 226.2 violate the prohibition against bills of attainder of Article I, Section 10 of the United States Constitution. (Doc. No. 1 ¶¶ 58–64.)

The United States Constitution provides "[n]o State shall . . . pass any Bill of Attainder." U.S. Const. art. I, § 10, cl. 1. "A bill of attainder is 'a law that legislatively determines guilt and

inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002) (citing *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)). Here, defendants argue that plaintiffs' bill of attainder challenge fails to state a claim because subdivisions (g)(2) and (g)(5) of California Labor Code § 226.2 do not impose a cognizable punishment as required in order to constitute a bill of attainder. (Doc. No. 10 at 18.) To determine whether a statute inflicts punishment, courts must weigh the following factors: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a [legislative] intent to punish." *Selective Serv. Sys. v. Minnesota Pub. Interest Research Grp.*, 468 U.S. 841, 852 (1984) (citing *Nixon*, 433 U.S. at 473, 475–76, 478). The first two factors are indicative of whether a statutory scheme constitutes punishment. *See Hamad v. Gates*, 732 F.3d 990, 1004 (9th Cir. 2013) (citing *SeaRiver*, 309 F.3d at 673).

### 1.     Subdivisions (g)(2) and (g)(5) do not constitute legislative punishment.

Subdivisions (g)(2) and (g)(5) of Labor Code § 226.2 do not fall within the historical meaning of legislative punishment. Those exceptions merely bar access to an affirmative defense in certain litigations. Unlike traditional bills of attainder, the provisions do not involve the imposition of penalties such as "death, imprisonment, banishment, the punitive confiscation of property by the sovereign, or . . . a bar to designated individuals or groups participating in specified employments or vocations." *SeaRiver*, 309 F.3d at 673 (citing *Nixon*, 433 U.S. at 473–74).

Moreover, the exceptions in subdivisions (g)(2) and (g)(5) fail the alternative "functional test" for punishment—i.e., whether the exceptions, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes. *See SeaRiver*, 309 F.3d at 674. Plaintiffs and amici characterize the principal effects of these exceptions as exposing certain employers to liability while providing relief for future bad conduct. The court finds these arguments unavailing. Labor Code § 226.2 itself poses little

burden to the plaintiffs and certainly not one that threatens, directly or indirectly, a right to life, liberty, or property. The safe harbor provision and its exceptions neither impose nor give rise to liability under existing minimum wage laws; rather, they only deny a newly created affirmative defense to certain employers in preexisting litigation, on the basis of the length of that litigation and the nature of the claims being asserted against those employers. Nor does the safe harbor provision provide "relief" from improper conduct in the future. To the extent employers face future claims arising from their alleged failure to properly pay piece-rate employees, those employers may seek protection of a safe harbor by compensating employees under alternative methods of calculating past wages due. *See* Cal. Lab. Code § 226.2(b)(1). As the legislature has made clear, even that defense is limited: it may only be asserted prior to 2021. *See* Cal. Lab. Code § 226.2(k). Finally, the court concludes that subdivisions (g)(2) and (g)(5) reasonably can be said to further nonpunitive legislative purposes. As discussed above, by enacting Labor Code § 226.2, the legislature reasonably sought to strike a balance between addressing the expected increase in litigation in the wake of the decisions in *Gonzalez* and *Bluford*, and preserving the expectations of parties who had engaged in litigation for a significant period of time before the law took effect.

Plaintiffs and amici are certainly correct that subdivisions (g)(2) and (g)(5) create certain classifications among employers based on the nature and length of preexisting litigation. But these classifications do not impose judgment without trial nor do they deprive employers of liberty, property interests, or even access to the courts. Such classifications, therefore, are not punitive and do not constitute unconstitutional bills of attainder.

        2.       <u>The legislative record evinces no intent to punish.</u>

Because subdivisions (g)(2) and (g)(5) do not constitute punishment, the court need not examine whether the legislature specifically intended to punish plaintiffs, as plaintiffs and amici urge the court to do here. However, even if the court were to consider legislative intent, it finds nothing in the legislative record presented to suggest a desire on the part of the California legislature to punish plaintiffs Fowler and Gerawan. In their complaint, plaintiffs rely solely on statements, made outside the legislative record, by state legislators regarding the provisions of AB

1513, including statements by the bill's author regarding negotiations that led to inclusion of subdivisions (g)(2) and (g)(5) in the bill's final language.  While such statements may suggest legislators were aware that exclusion of plaintiffs Fowler and Gerawan from use of the safe harbor in pending litigation was part of an agreement to help obtain passage of AB 1513, they fail to support a finding by the court that the legislature's adoption of subdivisions (g)(2) and (g)(5) was punitive in nature.

Accordingly, defendants' motion to dismiss as to plaintiffs' bill of attainder claim will also be granted.

## CONCLUSION

For the reasons stated above,

1. Defendants' motion to dismiss plaintiffs' claims (Doc. No. 10) is granted;[4]
2. This action is dismissed;
3. The July 20, 2016, pretrial scheduling conference is vacated; and
4. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated: **July 7, 2016**

UNITED STATES DISTRICT JUDGE

---

[4] Because plaintiffs' claims are dismissed in their entirety, the court declines to reach the issue of whether defendant David M. Lanier is properly named in this action.

15